## Case No. 442.

ANONYMOUS.

[1 Cranch, C. C. 139.]

Circuit Court, District of Columbia. July Term, 1803.

EQUITY PRACTICE—ANSWER—ATTACHMENT.

## Case No. 443.

ANONYMOUS.

[2 Dall. 382.][2]

Circuit Court, D. Pennsylvania. April Term, 1797.

Lewis observed, that the supreme court held, that the Pennsylvania act, and not the English practice, must regulate the proceedings with respect to juries; and the case of a tales in trials by special jury, though admissible at common law, might not have been adopted by the legislature, on account of the inconveniences, which the practice tended to introduce. But whatever may have been the previous law, the legislative rule must be pursued; and expressio unius est exclusio ulterius.

Rawle conceived, that the 12th section of the judicial act, (1 Swift's Ed. p. 67, [see section 29, 1 Stat. 88,]) settled the question. In the first part of the section, the provision for empanneling juries in general, obviously including both special and common juries; and, as there is the same generality of expression in the latter part of the section, when provision is made for returning a tales, it ought also, by a parity of construction, to be extended to both cases.

## Case No. 444.

ANONYMOUS.

[1 Gall. 22.][1]

Circuit Court, D. Massachusetts. May Term, 1812.

ADMIRALTY—PRACTICE—AMENDMENTS ON APPEAL.

1. The circuit court has authority to allow amendments in revenue causes or proceedings in rem, brought by appeal from the district court.

[Cited in Jay v. Almy, Case No. 7,236; Kennedy v. Bank of Georgia, 8 How. (49 U. S.) 611; Warren v. Moody, 9 Fed. 673; Irvine v. The Hesper, 122 U. S. 266, 7 Sup. Ct. 1182.]

[2. Cited in U. S. v. Athens Armory, Case No. 14,473, to the point that a proceeding in rem to confiscate property is a civil suit.]

[See The Edward, 1 Wheat. (14 U. S.) 261.]

In admiralty.

[Before STORY, Circuit Justice, and DAVIS, District Judge.]

STORY, Circuit Justice, delivered the opinion of the court:

The question as to the right of this court to grant amendments, in cases of libels, or informations, in rem, for violations of

---

[1][Reported by Hon. William Cranch, Chief Judge.]

[2][Reported by A. J. Dallas, Esq.]

[1][Reported by John Gallison, Esq.]

municipal laws, brought by appeal from the district court to this court, has been argued several times, as a question of general importance, and the court will now deliver its opinion.

By the judiciary act of 1789, c. 20, § 32, [1 Stat. 91,] it is enacted, that all the courts of the United States, may, at any time, permit either of the parties "to amend any defect in the process or pleadings, upon such conditions, as the said courts respectively shall, in their discretion, and by their rules, prescribe." The language of this section is sufficiently comprehensive to sustain the application for amendments in any cases before the court; but it has been attempted to be restricted to causes of original, and not to be extended to causes of appellate jurisdiction. But we find no such distinction in the statute: and even in appellate courts, proceeding according to the course of the common law, defects apparent upon the record may, be amended, when they come within the general purview of statutes. Indeed, in Rex v. Ponsonby, 1 Wils. 303, the rule is laid down rather more broadly: "that the superior court, where error is brought, may make such amendments, as the court below may; but that can only be done, when the superior court has the same matter to amend by, as the inferior has." See, also, Pease v. Morgan, 7 Johns. 468. There is then, in the nature of an appellate jurisdiction, nothing which forbids the granting of amendments.

2. It is said in the next place, that these proceedings in rem are of a criminal nature, and therefore not amendable. If they are of a criminal nature, the argument is by no means satisfactory; because, at common law, criminal proceedings are amendable in matters of form at all times, and in matter of substance also, while they are in paper. Queen v. Tuchin, 1 Salk. 51, 2 Ld. Raym. 1068; King v. Hill Darley, 4 East, 175. For as to amendments, at common law, there is no difference between civil and criminal proceedings. The statutes of jeofails were not originally extended to the latter; but this was grounded upon the peculiar wording in some of these statutes, and in others upon express exceptions. Amendments of informations, in personam, are now considered so much as a matter of course, that they are even made on application to the judges at chambers. Rex v. Wilkes, 4 Burrows, 2527; Rex v. Holland, 4 Term R. 457; 2 Hawk. P. C. c. 25, Indictment, § 97, p. 347. Yet, in these causes, the amendments are generally, if not universally, founded on the common law authority of the courts. But it is not true, that informations in rem are criminal proceedings. On the contrary, it has been solemnly adjudged that they are civil proceedings. Ketland v. The Cassius, Case No. 7,743; U. S. v. La Vengeance, 3 Dall. [3 U. S.] 297; U. S. v. The Sally, 2 Cranch,

[6 U. S.] 406; U. S. v. The Betsey and Charlotte, 4 Cranch, [8 U. S.] 443. See, also, The Fabius, 2 C. Rob. Adm. 245.

As to the practice of amendments in proceedings in rem, we find a great variety of authorities. Baldwin v. ——, Bunb. 49; Lock v. Williford, Id. 72; Kennet v. Lloyd, Id. 58; Edgell v. Decker, Id. 252; Brooke v. Day, Id. 334. And in Attorney General v. Henderson, 3 Anstr. 714, the court, upon inquiry, held, that the practice in revenue informations was, that the attorney general might, at any time, amend as of course. Now it will be found, that excepting under the statute 16 & 17 Car. II. c. 8, § 2, (which extends the benefit of that statute to all informations concerning customs and subsidies of tonnage and poundage, and purely applies to the curing of defects after verdict) these amendments are granted solely upon the footing of the common law. This objection, therefore, cannot prevail.

3. It is said, in the next place, that these causes are in the nature of proceedings, in rem, in the exchequer, and ought not to be varied by amendments, after they have become records of the court below, and can no longer be considered as proceedings in paper. Admitting that these proceedings are in the nature of exchequer informations, it may well be doubted, if the inference assumed be incontrovertible. By the appeal, the judgment and decree of the court below are suspended. [Penhallow v. Doane,] 3 Dall. [3 U. S.] 88, 118; Yeaton v. U. S., 5 Cranch, [9 U. S.] 281. The whole cause is to be heard anew, both as to law and fact; and in these particulars is, it seems, a cause de novo in this court. One ground of allowing amendments in any court, is, that the parties are often surprised by new evidence, at the trial, which they could not have foreseen, and therefore, they are allowed to amend in furtherance of public justice. Now this principle applies as forcibly to this court, in the exercise of its appellate, as its original jurisdiction; for the new facts may entirely vary the former case: and if, upon the appeal, no amendment could be made, it would afford temptation to suppress all defence in the court below, and thereby to obtain an unjust advantage in this court, by surprise. But whatever may have been the rules prescribed as to process or forms of pleading, it is very clear, and has been too firmly settled to be shaken, that these proceedings are of admiralty and maritime jurisdiction, (U. S. v. La Vengeance, 3 Dall. [3 U. S.] 297; U. S. v. The Sally, 2 Cranch, [6 U. S.] 406; U. S. v. The Betsey and Charlotte, 4 Cranch, [8 U. S.] 443;) and the principle of these decisions seems confirmed in the admiralty in England (The Fabius, 2 C. Rob. Adm. 245.) If then these are admiralty and maritime causes, the appeal must let in all the general principles, which govern such causes. Now, no principle is more exactly settled, than

that upon an appeal in an admiralty cause, it is allowable, under certain restrictions, to allege what has not been before alleged, and to prove what has not been before proved. Clerke's Prax. tit. 54; 1 Brown, Civil & Adm. Law, 500; 2 Brown, Civil & Adm. Law, 436; Cod. lib. 7, tit. 63, §§ 1, 4; Yeaton v. U. S., 5 Cranch, [9 U. S.] 281. And this right to allow new allegations, seems the natural result, from the introduction of new evidence on the appeal. The same practice is familiar in our state courts on appeals; and though it derives countenance from our statutes, yet I apprehend that the true ground why the practice has obtained is, that on the appeal the proceedings are considered as de novo in the appellate jurisdiction.

On the whole, we are well satisfied of our right to grant the amendments, which seem necessary, in the various causes before us, on appeal. But it is an exercise of sound discretion, in which the court will take care, that no unfair advantage shall be taken by one party, and no oppression practised by the other. Considering the nature of informations in rem, the countenance which has heretofore been allowed to amendments in the appellate courts, and the mischiefs which would arise from a sudden change of practice, we shall now allow the amendments asked for: But we do not mean to lay it down as a general rule, that such amendments will be hereafter allowed, as of course, in this court; on the contrary, having the authority, we shall probably limit the exercise of the discretion by general regulations.

Amendments allowed.

NOTE. [from original report.] See The Caroline v. U. S., 7 Cranch, [11 U. S.] 496; The Anne v. U. S., 7 Cranch, [11 U. S.] 570; The Hoppet v. U. S., 7 Cranch, [11 U. S.] 389; The Adeline, 9 Cranch, [13 U. S.] 244; The Divina Pustora, 4 Wheat. [17 U. S.] 52; The Harmony, [Case No. 6,081;  Orne v. Townsend, [Case No. 10,583.]