[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The matter before the Court is the petition of the National Association of Nurses, Local 79, Division of National Association of Government Employees (Union) to confirm an arbitrator's award issued on March 21, 1990 against the respondent employer, the State of Rhode Island (Employer).
The parties to this action are parties to a collective bargaining agreement and have been subject to a collective bargaining relationship since 1979. A pertinent section of that collective bargaining agreement provides:
 13.8 WORKER'S COMPENSATION Whenever an employee shall be absent from his duties and receiving compensation as provided in the Worker's Compensation Laws, he shall be granted sick leave in accordance with the rules applicable thereto, in an amount not to exceed his regular compensation. Deductions from accumulated credits shall be applied only to that part of his salary which is paid as an addition to Worker's Compensation payments, and the total of the two shall not exceed the regular salary for a given pay period. Annual leave credits may be applied in the same manner. When such absence shall not be covered by sick leave or annual leave, it shall be deemed to be leave without pay.
 (a) If it shall be determined during the Worker's Compensation proceedings that an injury resulted from a physical assault arising out of the regular course of employment, the employee's leave shall not be reduced for the first twenty-six (26) weeks of the disability arising from such an assault. During the twenty-seventh (27) week and thereafter, for the duration of the employee's disability, deductions from the accumulated credit shall be applied as indicated above.
It is undisputed that prior to July 1, 1989 an employee who was receiving Worker's Compensation benefits was entitled to discharge sick leave or vacation leave in order to supplement the Worker's Compensation benefit to one hundred percent (100%) of salary. In July of 1989, two events occurred which are of significance to this matter.
Effective July 1, 1989, the General Assembly enacted General Laws 1956 (1984 Reenactment) § 36-4-64 which provides:
 36-4-64. Sick Leave — Workers' compensation.
 (a) Whenever an employee shall be absent from his/her duties and is awaiting workers' compensation benefits, he/she shall be granted sick leave in an amount not to exceed his regular compensation.
 (b) Whenever an employee shall be absent from his/her duties and is receiving compensation as provided in the workers' compensation laws, he/she shall be granted sick leave so that the total of his/her compensation as provided in the workers' compensation laws and his/her deductions from sick leave shall not exceed eighty three and three tenths percent (83.3%) of his regular compensation. Deductions from accumulated credits shall be applied only to that part of his/her salary which is paid as an addition to workers' compensation payments. Annual leave credits may be applied in the same manner. When such absence shall not be covered by sick leave or annual leave it shall be deemed to be leave without pay.
Subsequent to the effective date of this enactment, the parties negotiated and entered into a successor collective bargaining agreement which became the subject matter of this arbitration award.
Section 13.8 of the new agreement remained unchanged. During the negotiations neither party sought to amend the language in light of § 36-4-64 although it is undisputed that both sides were aware of its existence. The State sought to delete section 13.8 in its entirety but eventually withdrew that proposal.
Thus, on July 11, 1989 the Employer notified the Union it intended to implement the provisions of § 36-4-64. Union filed a grievance which resulted in an arbitration award dated March 21, 1990.
The travel of this matter since the issuance of the arbitration award points to the unique statutory framework surrounding arbitration awards and their judicial enforcement. Union filed a timely petition, pursuant to General Laws 1956 (1986 Reenactment) § 28-9-17 for an order confirming the award. Employer's motion to vacate the award was filed beyond the three month limitation for such a motion allowed by § 28-9-21. The motion to vacate was properly denied on the ground it was not timely filed and Employer was allowed to file an objection to the Petition to Confirm the Arbitration Award. The uniqueness of this present posture is that § 28-9-21 permits Employer to raise in its objection, the same grounds it could have raised in its own motion to vacate the award.
The arbitrator found the State of Rhode Island to have violated Article 13.8 of the collective bargaining agreement when it implemented the provision of § 36-4-64 and ordered the Employer to compensate any bargaining unit member for any monetary loss suffered as a result of the violation.
In rendering her award and decision, the arbitrator specifically declined to interpret the provisions of § 36-4-64. She confined her decision to a strict reading of the contract language and declined to rule on the applicability of the statute. George A. Vose in his capacity as Director for the R.I.Department of Corrections v. Rhode Island Brotherhood ofCorrectional Officers, 587 A.2d 913 (R.I. 1991); Power v. City ofProvidence, 582 A.2d 895 (R.I. 1990). Thus, the arbitrator has imperfectly executed her powers and failed to make a final award on the applicability of § 36-4-64.
The authority of the Superior Court in reviewing arbitration awards is statutorily limited. It is axiomatic that absent a manifest disregard of the contractual provisions or a completely irrational result, the courts have no authority to vacate an arbitrator's award. Jacinto v. Egan, 120 R.I. 907,391 A.2d 1173 (1978); Belanger v. Matteson, 115 R.I. 332, 346 A.2d 124
(1975). A reviewing court should determine only whether the arbitrator has resolved the grievance by considering the proper sources. Jacinto v. Egan, 120 R.I. at 912, 391 A.2d at 1176. Judicial reversal of an arbitration award solely on a reviewing court's disagreement with the result is prohibited.
In this case, the arbitrator failed to consider the proper sources in rendering her award and has exceeded her powers. The question of the applicability of § 36-4-64 to section 13.8 of the contract was placed squarely before the arbitrator by the grievance which read:
 Nature of Complaint — NAGE bargaining unit members presently on W.C. prior to 7-1-89 had unilateral changes in monetary benefits due to change in W.C. law. As of 7-1-89 new law on W/C payments in direct violation of CBA.
 Resolution Desired — (1) retain benefits under present contract.
 (2) retain benefit language as in present CBA.
 The arbitrator framed the issue as follows:
 "What shall be the disposition of the grievance?"
Therefore the parties vested the arbitrator with the authority, indeed with the responsibility to rule on the applicability of § 36-4-64 to the collective bargaining agreement.
In declining to rule on the applicability of the statute the arbitrator stated:
 "The authority of an arbitrator begins and ends with interpretation and application of the terms and provisions contained in the Collective Bargaining Agreement. While it is generally recognized that arbitrators may look to external law as an aid in interpreting contractual provisions, the interpretation and application of such laws is more appropriately left to a court of competent jurisdiction. In this case, it is the State's action and its impact upon the Collective Bargaining Agreement which must be reviewed, not an interpretation of the statute which may have formed the basis for the State's action . . ."
The arbitrator therefore failed in her duty to apply the law to the facts in the case before her.
Our Supreme Court has recently addressed the question of the applicability of state law to collective bargaining agreements.Vose v. Rhode Island Brotherhood of Correctional Officers,
548 A.2d 913 (R.I. 1991) and the effects of private agreements made in contravention of state law. Power v. City of Providence,582 A.2d 895 (R.I. 1990).
It is well settled that parties are not free to enter into contracts in contravention to a state statute. Such contracts are illegal and no contract rights are created thereby. Vose v.Rhode Island Brotherhood of Correctional Officers, 548 A.2d 913, 9 (R.I. 1991); Birkett v. Chatterton, 13 R.I. 299, 302 (1881).
Likewise, during the course of contract negotiations parties are not free to ignore existing state law and subsequently argue such provisions have no applicability to the resulting agreement.
It should be noted that several other jurisdictions have also addressed the issue of the relationship between a provision in a collective bargaining agreement that is inconsistent with a state statute or regulation. The Court is mindful, however, that these cases are not controlling in this jurisdiction.
In Board of Trustees v. Federation of Technical CollegeTeachers, 179 Conn. 184, 425 A.2d 1247 (1979), a conflict existed between a state statutory provision and a clause in a collective bargaining agreement for calculating the accrual of sick leave. The arbitrator applied the provisions of the contract expressly stating that he was not empowered to determine whether the clause in the contract was in conflict with the state statutes and regulations. The court held that the arbitrator's award which applied the terms of the collective bargaining agreement conflicted with the statutes and regulations and was thus illegal and rendered in excess of the arbitrator's powers.Id., at 425 A.2d 1252. The court further explained that if a contract term is illegal in light of conflicting statutes it is not legitimated by the arbitration process; and if the agreement should not on that account be enforced, it is not rendered enforceable by an arbitrator's decision. Id., at 425 A.2d 1253.[1] The court concluded that the arbitrator's award conflicted with the law, and was thus rendered in excess of the arbitrator's power.
Similarly, in Kreidler v. Bic Pen Corporation, 547 A.2d 590
(Conn. App. 1988), the court was confronted with a worker's compensation statute for determining wages and salary and an inconsistent provision in a collective bargaining agreement. In holding the language of the statute controlling, the court reasoned that . . . "statutes cannot be preempted by a collective bargaining agreement or any contract between parties." Id., at 547 A.2d 593. Moreover, the court noted that there is a presumption that parties contract in light of existing statutes.Id. The court further explained that statutes existing at the time a contract is made become a part of it and must be read into it just as if an express provision to that effect were inserted therein. Therefore the terms of statutes must necessarily prevail over inconsistent provisions in collective bargaining agreements.Id.
In Morris v. Prince George's County, Md., 573 A.2d 1346
(Md. 1990), the court rejected a claim that a provision in a collective bargaining agreement took precedent over a state statute when determining years of service for retirement eligibility. The court held that a provision of an agreement, collective bargaining or otherwise, that is inconsistent with a statute cannot stand. Id., at 573 A.2d 1355; See also, Ewing v.Koppers Co., 312 Md. 45, 54, 537 A.2d 1173, 1177 (1988) ("parties to a collective bargaining agreement are not free to "opt out' of legitimate state controls simply by agreeing to impermissible conditions").
In the case at bar, the parties entered into and concluded contract negotiations after the effective date of § 36-4-64. There is therefore no issue with regard to retroactive amendment of the contract or retrospective application of the statute. Indeed, statutes existing at the time a contract is made became a part of it and must be read into it just as if an express provision to that effect were inserted therein. Kreidler, supra.
Moreover, the terms of a statute must prevail of inconsistent provisions in collective bargaining agreements. Id. Thus, the arbitrator's award which applied the terms of the collective bargaining agreement conflicted with the clear unequivocal language of § 36-4-64, the arbitrator's decision was therefore illegal and rendered in excess of her powers.
In Vose, supra the Supreme Court held in an analogous matter that the Department of Corrections does not have the authority to bargain away any statutory powers of its director. Likewise, inPower v. City of Providence, supra, the Supreme Court held that statutory obligations cannot be contractually obligated. InPower, the so-called statutory obligation was a mandatory retirement age found in the Providence Retirement Act, P.L. 1923, Ch. 489 as amended by P.L. 1968, Ch. 146.
Both Vose and Power are similar to this case in terms of the effect of state law on collective bargaining agreements and conditions of employment. While Union also argues that § 36-4-64
of the Merit Law found in Chapter 4 of title 36 does not apply to collective bargaining agreements, this argument is without merit. The Merit Law itself divides the positions of state service into the classified and unclassified service. All positions and state service fall within the classified service unless specifically exempted in § 36-4-2.
For the foregoing reasons, the arbitrator has so imperfectly executed her powers that she has failed to render a definite and final award. The petition of the National Association of Nurses, Local 79 to confirm the award is denied.
[1] "Just as private parties cannot expect a court to enforce a contract between them to engage in conduct which is illegal or otherwise contrary to public policy, they cannot expect an intervening arbitral award approving (or ordering) that conduct to receive judicial endorsement." Gorman, Basic Text on LaborLaw, Unionization and Collective Bargaining (1976) p. 593.